IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

IN RE:

DAVID FRANK McMELLON
EMILY CATHERINE McMELLON

                    Debtors.

STEEL OF WEST VIRGINIA, INC. and
SWVA, INC.,

                    Appellants,

v.                                         CIVIL  ACTION  NO.  3:11-0047

DAVID FRANK McMELLON and
EMILY CATHERINE McMELLON,

                    Appellees.

## MEMORANDUM OPINION AND ORDER

Pending is a brief of objections filed by Steel of West Virginia, Inc. and SWVA, Inc. (collectively, "Steel") to the bankruptcy court's order reopening the case of the debtors David and Emily McMellon for the purpose of adding to their asset schedules a concurrently pending wrongful termination claim.  For the following reasons, the Court **REVERSES** the decision of the bankruptcy court reopening the case, **DENIES** the debtor's motion to reopen **WITHOUT PREJUDICE**, and **REMANDS** this matter for further proceedings.

I.      **Background and Procedural History**

On March 3, 2010, David and Emily McMellon initiated a voluntary Chapter 7 petition,

seeking bankruptcy protection.  In accordance with the usual practice in these proceedings, the debtors filed a standard Statement of Financial Affairs and various schedules summarizing their assets and liabilities. Based on the information that was submitted, the bankruptcy court permanently discharged the McMellons' debts on June 16, 2010, and closed the case on August 24, 2010.

Shortly thereafter, on September 8, 2010, Mr. McMellon filed a wrongful discharge complaint in Cabell County Circuit Court against his former employer, Steel, based on the events that led to the termination from his long-time position with the company in December of 2009.  On October 5, 2010, Steel moved to dismiss Mr. McMellon's wrongful discharge claim in State court on judicial estoppel grounds.  Steel argued that, because Mr. McMellon did not disclose the factual predicate for the claim in federal bankruptcy court, he was estopped from now claiming that it was a valid cause of action in State court.

Less than a week before the Cabell County Circuit Court held a hearing on Steel's motion to dismiss, Mr. McMellon filed a motion in bankruptcy court to reopen the instant case for the purpose of amending his schedule of assets to include the omitted wrongful discharge claim.  Upon objection to the petition by Steel, the bankruptcy court conducted a hearing on December 15, 2010.  Mr. McMellon testified, and blamed a lawyer who had represented him in a post-termination unemployment hearing for failing to timely advise him on the validity of the claim.  As he submits, he did not list the claim as a potential asset because the lawyer essentially never confirmed whether it was valid.

At the hearing, the trustee also testified, and concluded that the case should be reopened because it is in the best interest of Mr. McMellon's creditors to do as much.  The bankruptcy court granted the petition to reopen the case.  With regard to the allegation as to whether Mr. McMellon

actively concealed his wrongful discharge claim as a potential asset, the court held as follows:

> This Court has no reservation with the finding, after having heard the testimony of Mr. David McMellon that his failure to schedule a possible wrongful discharge case was not, by any means, willful or in connection with an attempt to take advantage of his creditors or to slight his creditors any opportunity for recovery, but merely because the conflicting and inconsistent advice he had received from the counsel he had engaged to understand his chances for recovery on a wrongful discrimination case. . . . Accordingly, this Court FINDS that the Debtor has demonstrated adequately that it is in the interest of justice to allow him to reopen the bankruptcy case for the purpose of amending the schedules, to list a claim that has now been asserted in the Circuit Court of Cabell County, West Virginia[] . . . .

Bankr. Ct. Order to Reopen 4, No. 2 (Ex. 11).  The court weighed heavily the consideration of Mr. McMellon's creditors in deciding to grant the motion.  *Id.*  Steel now appeals the decision to reopen the case.

## II.     Discussion

The sole issue on appeal is whether the bankruptcy court erred by deciding to reopen the debtors' Chapter 7 bankruptcy case in light of the evidence presented at the hearing when the debtors failed to disclose a potentially meritorious wrongful discharge claim.  Steel contends that there is substantial evidence that Mr. McMellon concealed the instant claim from his applicable asset disclosure filings.

### A.     Standard of Review

The court may hear bankruptcy appeals from "final judgments, orders and decrees" or "with leave of the court, from interlocutory orders and decrees."  28 U.S.C. §§ 158(a)(1), (3).  "The vast body of law articulating rigorous finality standards for the appealability of orders is largely inapplicable here in the bankruptcy context," as bankruptcy proceedings are generally required to be administered in a more "pragmatic" and "less technical" manner.  *See In re Swyter*, 263 B.R. 742, 746 (E.D. Va. 2001).  An order is appealable in the bankruptcy context where it "(i) finally

-3-

determines or seriously affects a party's substantive rights, or (ii) will cause irreparable harm to the losing party or waste judicial resources if the appeal is deferred until the conclusion of the bankruptcy case." *Id.* (citations omitted).

The bankruptcy court's decision to reopen the instant case does not give further opportunity for the parties to challenge the change in the schedule of assets.  It simply permits the amendment in the manner the McMellons have requested.  The Court believes this is sufficient to constitute a final judgment under 28 U.S.C. § 158(a)(1) because it effectively "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[1]  *See In re Cusson*, 412 B.R. 646, 652 (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945) (further citation omitted)); *see also In re Bonner*, No. 04-8101, 2005 WL 2136204, at *3-4 (B.A.P. 6th Cir. Sept. 6, 2005); *In re Parker*, 264 B.R. 685, 689 (B.A.P. 10th Cir. 2001).  That is, "it . . . completely resolve[s] all of the issues pertaining to a discrete claim." *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992).

The decision to reopen a bankruptcy case is reviewed under an abuse of discretion standard. *Hawkins v. Landmark Fin. Co.*, 727 F.2d 324, 327 (4th Cir. 1984).  The bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of fact under the clearly erroneous standard. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992).  A finding of fact is clearly erroneous if the court is left with a "firm and definite conviction that a mistake has been committed." *In re Daugherty Coal Co., Inc.*, 144 B.R. 320, 322 (N.D. W. Va. 1992).

### B.     The Decision to Reopen

Steel argues that the bankruptcy court abused its discretion in reopening the instant case by

---

[1] Steel has also obtained leave to appeal the bankruptcy court's decision under 28 U.S.C. § 158(a)(3) as a precautionary measure.  *See* Fed. R. Bankr. P. 8001(b).

ignoring key facts that suggest that Mr. McMellon knew about his potential wrongful discharge claim before his bankruptcy case was closed, but actively concealed his knowledge of the issue from the court.  Steel contends that the bankruptcy court should have declined to grant the McMellons' motion in light of applicable law that does not permit the reopening of bankruptcy cases where a motion to reopen is filed only to prevent dismissal of a claim on the basis of judicial estoppel.

To properly address Steel's arguments, the Court must assess whether the bankruptcy court relied upon erroneous factual or legal premises in arriving at its ultimate finding.  *See United States v. Hedgepeth*, 418 F.3d 411, 418-19 (4th Cir. 2005).  The bankruptcy court may reopen a closed case in order to administer assets, accord relief to the debtor, or for other cause.  *See* 11 U.S.C. § 350(b). The right to reopen, while in the sound discretion of the bankruptcy judge, "depends upon the circumstances of the individual case." *In re Carter*, 156 B.R. 768, 770 (Bankr. E.D. Va. 1993).  The Court must therefore examine the record of the proceedings below in order to determine whether the decision was proper.

Under the Bankruptcy Code,  all of a debtor's interests in property at the time his petition is filed, including any claims he may have, must be added to the bankruptcy estate.  *See* 11 U.S.C. § 541(a)(1).  The debtor must disclose all potentially meritorious claims, not simply those that are guaranteed to succeed.  *Casto v. Am. Union Boiler Co. of W. Va.*, No. 2:05-cv-00757, 2006 WL 660458, at *2 ("Pursuant to this duty to disclose, debtors 'must disclose all potential causes of action including litigation that is likely to arise in a non-bankruptcy setting.'" (quoting *In re Baldwin*, 307 B.R. 251, 265 (M.D. Al. 2004))).  To paraphrase one court:

> The debtor need not know all the facts or even the legal basis for the cause of action; rather, if a debtor has enough information, prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed. Any claim with potential must be disclosed, even if it is contingent, dependent,

or conditional.

*In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999) (quotations omitted).

Steel cites to various decisions which it claims support the proposition that courts generally do not permit the reopening of bankruptcy cases under circumstances similar to those in this case. *See, e.g.*, *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 800 (D.C. Cir. 2010) (affirming the district court's dismissal of a retaliation claim on grounds of judicial estoppel where claimant failed to disclose the claim in a concurrent bankruptcy proceeding); *In re Walker*, 323 B.R. 188, 194-96 (Bankr. S.D. Tex. 2005) (refusing to reopen a debtor's case for the purpose of adding a previously undisclosed cause of action). Steel's cases draw on the importance of protecting the integrity of the bankruptcy system by requiring exhaustive disclosure of potential claims and other assets, and refusing to let debtors benefit from concealment. *See In re Walker*, 323 B.R. at 199. Courts adopting this line of reasoning consider whether the debtor acted in good faith in omitting a potential claim. *See, e.g.*, *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008) (noting that "policy considerations militate against adopting a rule that good faith is irrelevant to the reopening of a bankruptcy case to administer undisclosed lawsuits").

Alternatively, Mr. McMellon cites three cases from federal courts in Georgia which suggest that, in exercising its discretion to reopen a case, the bankruptcy court should *not* consider whether the debtor acted in good faith in omitting potential claims from his asset schedules. *See, e.g.*, *In re Rochester*, 308 B.R. 596, 601-02 (Bankr. N.D. Ga. 2004). Rather, these cases intimate that the most important consideration in the decision calculus on a motion to reopen is the interest of the creditors. *See, e.g.*, *In re Upshur*, 317 B.R. 446, 454 (Bankr. N.D. Ga. 2004) (noting that the debtor's lack of good faith would not be sufficient grounds to deny a motion to reopen). As decisions to reopen for

-6-

the purpose of adding omitted assets—whether or not they were excluded intentionally—generally

concern only the trustee's proposed administration of these asset for the estate's creditors, good faith

would, under this view, simply be irrelevant.  *See In re Lopez*, 283 B.R. 22, 27-28 (B.A.P. 9th Cir.

2002).

Uncovering no direct guidance from the Fourth Circuit on this issue, the Court finds

persuasive Steel's position that the Court should consider whether the debtor acted in good faith in

failing to disclose a potential claim.   Other courts in this district have been reluctant to permit a

claim to proceed in light of evidence that a Chapter 7 debtor failed to disclose the factual predicate

of the claim in the appropriate bankruptcy asset schedule.  *See, e.g.*, *Casto*, 2006 WL 660458, at *2-

3 (finding that a plaintiff was judicially estopped from pursuing a claim in light of her failure to

disclose it in a prior Chapter 7 bankruptcy proceeding).  Furthermore, while the Court acknowledges

what seems to be a split of authority on this issue, it finds more reasonable the proposition that the

reopening decision involves more than the narrow inquiry that the debtor in this case suggests.

Instead, a bankruptcy judge, far from a mechanistic referee, is a guardian of the bankruptcy process,

and should take into consideration the equitable factors present in cases like the one *sub judice*.

Even some of the authorities cited by Mr. McMellon suggest as much. *See In re Rochester*, 308 B.R.

at 601 (noting that courts have considered the benefits and prejudices to the defendant in pending

litigation, the debtor, and the debtor's creditors in engaging in this analysis).

Illustrative of these principles, the Court finds persuasive *In re Lowery*, 398 B.R. 512 (Bankr.

E.D.N.Y. 2008).  In that case, a bankruptcy court considered whether to grant a debtor's motion to

reopen her Chapter 7 bankruptcy case in order to schedule a previously undisclosed personal injury

action that was concurrently pending in State court. *Id.* at 513.  The court rejected the argument that

a debtor's good faith is irrelevant in the reopening decision calculus, concluding that the "long standing tenet of bankruptcy law" that requires full and honest disclosure is "crucial . . . to the bankruptcy system" because of the degree to which "the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor." *Id.* at 515. If debtors are permitted to intentionally fail to disclose potential claims during the bankruptcy process, and remedy their failure only upon discovery by an adversary party, the incentive to conceal would be all too tempting. Removing from the inquiry any consideration of the debtor's good faith would render the rules on candid disclosure toothless, and is simply not a position this Court will endorse.

The reasoning of *In re Lowery* is magnified even more after a review of the more recent cases emphasizing the importance of debtor candor to the bankruptcy process. *See, e.g.*, *Moses*, 606 F.3d at 800 (noting that allowing a debtor to "'back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after [an asset] omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.'" (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). Finally, while the bankruptcy court in this case did not explicitly state that it considered whether Mr. McMellon acted in good faith, it essentially took the issue into account in concluding that his mistake was inadvertent. The Court, therefore, examines the factual and legal findings in accordance with the foregoing reasoning.

In determining whether the debtor acted inadvertently or in bad faith, the court should consider whether he has both knowledge of a potential claim, and a motive to conceal it. *See In re Lowery*, 398 B.R. at 515-16 (reasoning that an affirmative finding to this effect would negate the inference that non-disclosure was the product of an innocent mistake); *In re Meneses*, No. 05-86811-

ast, 2010 Bankr. LEXIS 700, at *7-8 (Bankr. E.D.N.Y. 2010) (same); *Casto*, 2006 WL 660458, at *3 (same).

### 1.    Knowledge

Mr. McMellon states that officials from Steel terminated him after roughly forty years of service to the company.   There is substantial evidence suggesting that he knew of the factual predicate for a potential wrongful termination claim.   The record reveals that Mr. McMellon testified that he was extremely embarrassed when he was fired, and felt as he walked out of the door that he was terminated because of his age and the fact that he has diabetes.   Further, it was only fifteen days after his bankruptcy case closed that Mr. McMellon filed a complaint against Steel in Cabell County Circuit Court.   At the hearing below, he claimed that he continued to believe *during* the bankruptcy proceedings that he had been wrongfully discharged, and continued to consult with other attorneys about initiating a potential claim.   His contention that his prior attorney essentially "never got back with him" regarding his the strength of the claim is immaterial.   Putting aside the fact that he testified at a February 9, 2010 post-termination unemployment hearing that, after consultation with his lawyer, he believed he had been terminated because of his age and disability, mere lack of communication with an attorney about the merits of a claim does not extinguish a debtor's disclosure duties. Nor does it remove his obligation to exercise candor to the bankruptcy court.   These facts amply demonstrate that Mr. McMellon knew of, and continued to believe in, the merit of a wrongful termination claim.[2]   Under the bankruptcy rules, he was required to disclose these facts.

---

[2] Steel also points out that Mr. McMellon had been actively litigating a separate personal injury lawsuit during the pendency of the bankruptcy proceedings.  It allegedly uncovered facts about this lawsuit after the bankruptcy court had already decided to reopen the McMellons' case. In this action, Mr. McMellon made a $10,000 settlement demand, and never disclosed the suit to the bankruptcy court.  Mr. McMellon notes that all he wanted to receive—and all he did

### 2.    Motive to Conceal

Mr. McMellon similarly had a motive to conceal his claim: failing to disclose it would not harm him unless his adversary uncovered his prior bankruptcy petition, and challenged his incomplete disclosure in the State proceeding.  Of course, this is precisely what occurred in this case.  Only a few days before the hearing in State court on Steel's motion to dismiss, the McMellons applied to reopen their bankruptcy petition for the sole purpose of adding the instant claim. Permitting debtors to profit from their non-disclosure in cases such as this would obviate the need for complete candor in the bankruptcy process.  Debtors could, after all, rationally choose to conceal their potential claims during bankruptcy, and subsequently or concurrently pursue them unless the pursuit is challenged.  This is a potentially profitable risk for the debtor, but not one that should be met with judicial approval.  *See Moses*, 606 F.3d at 800 (discussing the policy reasons for finding similarly).

### C.    Disposition

The bankruptcy court has discretion in determining whether to reopen a case for the purpose of administering assets, *Hawkins*, 727 F.2d at 327, but such discretion must be exercised reasonably in light of the facts and law presented.  Like the holdings of many other courts, this Court declines to permit obfuscation of the disclosure process, and believes that the bankruptcy court abused its

---

receive—from this lawsuit was an apology from the named defendant.  While that may be the case, his failure to disclose it raises substantial questions as to his failure to disclose the basis for the wrongful termination suit.  Federal bankruptcy disclosure rules are clearly exhaustive and require strict compliance.  As already discussed, any claim with potential must be disclosed, even if it is contingent, dependent, or conditional. *In re Coastal Plains*, 179 F.3d at 208.

discretion in reopening the case.[3]  The law in this jurisdiction and elsewhere supports such a finding.  While the interests of creditors are obviously vital to the reopening inquiry, this Court believes that the integrity of the bankruptcy process is a matter that weighs more heavily on these facts.  The evidence does not suggest that Mr. McMellon's failure to disclose the instant claim was simply inadvertent such that he had no knowledge of its factual predicate.  Rather, it seems as if he knew of and disregarded his duty to report his assets truthfully.  His excuse that his failure was inadvertent, and based upon lack of communication with his lawyer, is simply not compelling as "a mistaken belief [does] not relieve the debtor of his duty to file accurate schedules." *In re Gray*, 57 B.R. 927, 931 (Bankr. D.R.I. 1986).

To be sure, this Court holds only that the *debtor's* motion to reopen for the purposes of adding an omitted claim should not be granted where the motion was filed only as a response to his adversary's attempt to dismiss his underlying claim, and where there is substantial evidence that his failure to disclose that claim was not simply inadvertent.[4]  Other courts have held that the *trustee* should not be precluded from bringing a claim on behalf of the estate even where the debtor failed to disclose it.  *See Moses*, 606 F.3d at 800 (suggesting that a trustee could not be judicially estopped from bringing an undisclosed claim on behalf of the estate, even if the court finds that the debtor

---

[3] The bankruptcy court did not cite any authority in its opinion supporting the assertion that it has the discretion to excuse a debtor from established disclosure requirements where he has knowledge of a fact required to be disclosed and stands to motivate from not disclosing it.

[4] Even if the Court were to reach a contrary result and affirm the bankruptcy court's decision to reopen, the Cabell County Circuit Court could still find that Mr. McMellon is judicially estopped from pursuing his cause of action.  *See In re Dewberry*, 266 B.R. 916, 920-22 (Bankr. S.D. Ga. 2001) (suggesting that the court in which such a concurrent claim is pending has jurisdiction to conclude whether the debtor's conduct warrants the application of judicial estoppel, notwithstanding the actions of the federal bankruptcy court).

took inconsistent positions in both asserting the claim and omitting it from his asset schedules); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387 (5th Cir. 2008) (suggesting that a trustee should not be judicially estopped from pursuing a claim on behalf of the creditors that the debtor himself would be judicially estopped from pursuing); *In re Satterfield*, 2010 Bankr. LEXIS 2276, at *10-13 (Bankr. N.D. W. Va. July 26, 2010) (finding that a trustee who was substituted as party plaintiff for the debtor in an action that was not disclosed during the bankruptcy process was not judicially estopped because the debtor's non-disclosure did not implicate the rights of the trustee to pursue the claims on behalf of the estate).

In this case, both the former trustee and the U.S. Trustee testified at the hearings below that they supported the motion to reopen this case to determine whether the omitted claim could be an asset properly administered for the outstanding creditors. However, the trustee has not filed the instant motion; Mr. McMellon has. The State court, applying the principles of judicial estoppel, likely could not preclude the trustee from bringing Mr. McMellon's action on behalf of the creditors because the trustee did not fail to disclose the claim during the bankruptcy proceedings. Because the trustee has not sought to reopen this case on motion, however, this Court cannot rule on a hypothetical issue not before it. For that reason, the Court **REVERSES** the decision of the bankruptcy court, **DENIES** the debtor's motion to reopen **WITHOUT PREJUDICE**, and **REMANDS** with the instruction to consider whether the trustee would pursue this claim on behalf of the estate, as well as any other appropriate equitable considerations.

## III.    Conclusion

For the foregoing reasons, the Court **REVERSES** the decision of the bankruptcy court reopening the instant case, **DENIES** the debtor's motion to reopen **WITHOUT PREJUDICE** and

**REMANDS** for further proceedings consistent with this opinion.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        March 8, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE